Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1164 | **DATE** | 2/4/2003 |
| **CASE TITLE** | Marseilles Hydro Power, LLC vs. Marseilles Land & Water Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Defendant Marseilles Land & Water Company's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. Count II of the Complaint is STAYED pending final resolution of Marseilles Hydro Power, LLC's licensing proceeding before the Federal Energy Regulatory Commission. Count II of the complaint is DISMISSED as indicated in the Court's Memorandum Opinion and Order. Marseilles Hydro Power, LLC is ordered to file with the Clerk of the Court, within seven (7) days, the Second Amended Complaint (along with all exhibits) that was included as an exhibit to its December 23, 2002 Response to the Motion to Dismiss.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required | | | number of notices | |
| | Notices mailed by judge's staff. | | | FEB — 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | *eaw* | 78 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | WAP | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB - 4 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

MARSEILLES HYDRO POWER, LLC,

    Plaintiff,

v.

MARSEILLES LAND & WATER COMPANY,

    Defendant.

Case No. 00 CV 1164

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This case comes before the Court pursuant to a September 13, 2002 reassignment order following a remand by the Seventh Circuit. Plaintiff Marseilles Hydro Power, LLC (the "Power Company") brings this three-count second amended complaint ("Complaint") against Marseilles Land & Water Company (the "Canal Company"), seeking a declaratory judgment ("Count I") and related injunctive relief ("Count II") in connection with an alleged breach of contract. The Power Company also asserts a state common law claim for slander of title ("Count III"). The Canal Company has counterclaimed for breach of contract. Presently up for decision is the Canal Company's Motion to Dismiss the Complaint based on Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Motion is granted in part and denied in part.

**Preliminary Procedural Matters**

The Power Company filed its original complaint on February 28, 2000, and then amended it with leave of this Court on October 31, 2002. The Canal Company's November 26, 2002 Motion to Dismiss was addressed to that first amended complaint. As part of its response to the Motion to Dismiss, the Power Company tendered a second amended complaint. The Canal Company appears to have no objection to the second amended complaint being filed; in fact, the Canal Company has assumed the validity of the second amended complaint in its reply, acknowledging that the basis for its Motion to Dismiss Count I has been rendered moot. Accordingly, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 15(a), the Court accepts the second amended complaint and shall treat it as the operative complaint for purposes of this Motion to Dismiss. However, as a housekeeping matter, the Court notes that the second amended complaint does not appear to have been formally filed with the clerk or entered onto the docket for this case. Accordingly, the Court hereby directs the Power Company formally to file it within seven (7) days, along with all exhibits, with the clerk of the United States District Court for the Northern District of Illinois. The Canal Company's Motion to Dismiss, although aimed at the first amended complaint, shall stand as to any alleged defects in the complaint that have survived the second amendment. *Cf.* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1476

at 558 (2d Ed. 1990)(hereinafter, "Wright & Miller")("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

## BACKGROUND

The Canal Company and the Power Company are parties to an Indenture dated June 1, 1910, as amended on June 1, 1924 and as further amended on November 29, 1979 (the "Indenture"). According to the Complaint, the Indenture obligates the Canal Company to provide the Power Company with water power by means of a manmade race and dam (collectively, "the power canal") constructed adjacent to the Illinois River in the Town of Marseilles. In return, "[p]rovided that [the Canal Company] is not in default, the Indenture calls for [the Power Company] to pay a minimum rent of $41,500 per year." (Compl. ¶ 35.) The Power Company is in the process of rehabilitating a long-disused hydroelectric power plant (the "Power Plant") which, if and when it is finally operational, will be powered by the water supply guaranteed under the Indenture.

Before the Power Company can return the Power Plant to service, it must clear the following obstacles: (i) it must obtain a license from the Federal Energy Regulatory Commission ("FERC"), *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299

F.3d 643, 650 (7th Cir. 2002); (ii) it must secure a license from the Illinois Department of Natural Resources, which will first require that some portion of the accumulated sediment on the floor of the power canal be removed; and (iii) one of the channel walls of the power canal has collapsed and must be repaired in accordance with certain governmental approvals, including that of the Illinois Historic Preservation Society. The Power Company maintains that, under the express terms of the Indenture, it is the Canal Company's obligation to remove the sediment load and to repair and restore the power canal channel wall. The Power Company claims that "[a]lthough requested to do so, [the Canal Company] has failed and refused to remedy these conditions" and is therefore in breach of the Indenture. (Compl. ¶ 32.) The Power Company has refused to pay rent so long as the power canal remains in disrepair (Answer to Countercl. ¶ 9.); the Canal Company has counterclaimed for the withheld rent.

In Count I, the Power Company seeks a declaratory judgment that the Canal Company is in breach of its alleged obligations under the Indenture "to remove the sediment in the power canal with all reasonable diligence and dispatch" and "to repair and restore the power canal channel wall in a good and workmanlike manner." (Compl. at 7-8.) Pointing to the Canal Company's alleged financial inability to make the needed repairs to the power canal or to pay compensatory damages for its failure to do so, in Count II the

Power Company seeks an injunction against the Canal Company's interfering with it entering the Canal Company's property to repair the power canal "in accordance with plans and procedures approved by this Court." (Compl. ¶¶ 42-44.) The Power Company further argues that any such work should be carried out at the Canal Company's expense, and therefore asks this Court to grant the Power Company "a first and paramount lien on all assets of [the Canal Company] to secure the repayment of the costs and expenses incurred . . . in effectuating the repairs and removal of sediment load. . . ." (Compl. ¶45.)

Finally, in Count III the Power Company brings a claim for slander of title, alleging that the Canal Company filed with the Recorder of Deeds of LaSalle County (the "Recorder of Deeds") on or about July 17, 2001 a document stating that the Indenture had been terminated. The Power Company claims that in October 2000 it had recorded with the Recorder of Deeds a notice of renewal and extension of the Indenture and had served a copy of that paperwork on the Canal Company. The Power Company also notes that on November 7, 2000, Judge Conlon of this district had declared that the Power Company was a valid party to the Indenture and that the Indenture was in full force and effect. Accordingly, the Power Company maintains that the Canal Company's filing was false and malicious and that the Power Company suffered various special damages as a result. The Power Company also prays for punitive

damages in connection with this count, claiming that the "recording of the instrument . . . was done in a malicious manner and in an attempt to harm" the Power Company. (Compl. ¶ 55.)

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief could be granted, not whether the plaintiff will ultimately prevail on the merits. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In ruling on a motion to dismiss, a court must construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* A motion to dismiss will not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

## DISCUSSION

### COUNT II

As the Seventh Circuit emphasized in its opinion, this case boils down to a contract dispute. *Marseilles Hydro Power, LLC*, 299 F.3d at 651. The heart of that dispute is set out in Count I, which seeks a declaration of the rights and duties of the parties under certain provisions of the Indenture, and in the Canal Company's counterclaim for breach of the Indenture. Count II is simply a claim for a certain type of relief - an injunction (as

well as specific performance, in the form of a lien on the Canal Company's assets).

The Canal Company initially argues that Count II should be dismissed because the Court "may not have authority to order the injunctive relief" requested, "as the [FERC] has primary jurisdiction with regard to such matters." (Mot. to Dismiss ¶ 6.) The Canal Company is entirely mistaken. First, as a foundational matter, the Court most certainly has the *authority* to award injunctive relief in this case. *See Califano v. Yamasaki*, 442 U.S. 682, 705 (1979)("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction."). The precise scope and details of any such injunction are, of course, not known at this preliminary stage (nor, for that matter, are they suggested by the Power Company, which acknowledges that an injunction would only issue "in accordance with plans and procedures to be approved by this Court" (Compl. ¶ 46)), and would not become the subject of the Court's attention until and unless the Power Company prevails in this case and the Court decides to issue an injunction. At that point, the doctrine of primary jurisdiction might require the Court to *refer* certain issues to the FERC to ensure that the putative injunction properly integrates, and dovetails with, any FERC-imposed requirements related to repair of the power canal. *Marseilles Hydro Power, LLC*, 299 F.3d at 652;

cf. Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944)("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."). But the fact that it may be appropriate to refer select issues to FERC at a later stage of this case to ensure such a synthesis is certainly no basis for preemptively dismissing altogether the possibility of injunctive relief.

Alternatively, the Canal Company argues that Count II should be stayed pending resolution of the FERC licensing proceeding. The Seventh Circuit suggested as much in its opinion, noting that

> though there is no issue to refer to the FERC at the present time it might be a good idea for the district court to stay the lawsuit until the FERC proceeding concludes, since that proceeding may quite possibly either render the lawsuit moot (if the license is denied) except for the matter of unpaid rent, or require significant changes in the equitable relief ordered should the [P]ower [C]ompany succeed in proving its case.

Marseilles Hydro Power, LLC, 299 F.3d at 652. There is great sense in this suggestion; it would serve the interests of judicial economy and streamline the parties' expenditure of legal efforts. Cf. Levya v. Certified Grocers of Calif., 593 F.2d 857, 863-64 (9th Cir. 1979)("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in

character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.") Accordingly, for these and all the other reasons discussed in the Seventh Circuit's opinion, the Court hereby stays Count II pending final resolution of the Power Company's licensing proceeding before the FERC.

## COUNT III

In Illinois, slander of title "is established where there has been a false and malicious publication, either oral or written, of words disparaging a person's title to property which results in special damages." *Home Invs. Fund v. Robertson*, 295 N.E.2d 85, 87 (Ill. App. 1973). The Canal Company contends that Count III should be dismissed because (i) the Power Company has failed to plead "special" damages, and (ii) the damages that are alleged are not set forth with the specificity required by FEDERAL RULE OF CIVIL PROCEDURE 9(g) ("Rule 9(g)"). The Canal Company also argues that, insofar as Count III seeks punitive damages, it should be dismissed because the Power Company has failed "to allege egregious conduct with the specificity required by Rule 9(g)." (Mot. to Dismiss at 3.)

### *Special Damages*

"Special damages are usually considered to be damages that naturally, but not necessarily, flow from the wrongful conduct of another, while general damages naturally and necessarily flow from

the wrongful conduct." *Moore v. Boating Indus. Ass'ns*, 754 F.2d 698, 716 (7th Cir. 1985); *see also Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) ("Whether a particular kind of injury gives rise to 'special' damages . . . depends on the tort committed. The usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.'"); *Moricoli v. P & S Mgmt. Co.*, 432 N.E.2d 903, 906-07 (Ill. App. 1982)("Special damages are such as have actually occurred, computable in money, which are the natural, but not the necessary, result of the alleged wrong. . . ." (quoting 53 C.J.S. *Libel and Slander* § 240 (1948))). "Getting the distinction right might matter for pleading (see FED.R.CIV.P. 9(g)), or it might determine whether one has a claim at all. . . ." *Neal*, 191 F.3d at 832. In this case, it matters for both purposes.

A plaintiff bringing a cause of action for slander of title must specifically allege and prove special damages. FED.R.CIV.P. 9(g); *Cont'l Nut Co. v. Robert L. Berner Co.*, 393 F.2d 283, 286 (1968)("[S]uch is the nature of special damages. They are such as really took place. They are not to be implied but are to be specifically proved."). In a slander of title action, "special damages" mean specific pecuniary losses resulting from the slander. James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Actions for Slander of Title*, 4 A.L.R.4th 532 (1981) ("It is a well settled principle . . . that the injured party can recover

the wrongful conduct." *Moore v. Boating Indus. Ass'ns*, 754 F.2d 698, 716 (7th Cir. 1985); *see also Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) ("Whether a particular kind of injury gives rise to 'special' damages . . . depends on the tort committed. The usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.'"); *Moricoli v. P & S Mgmt. Co.*, 432 N.E.2d 903, 906-07 (Ill. App. 1982)("Special damages are such as have actually occurred, computable in money, which are the natural, but not the necessary, result of the alleged wrong. . . ." (quoting 53 C.J.S. *Libel and Slander* § 240 (1948))). "Getting the distinction right might matter for pleading (see FED.R.CIV.P. 9(g)), or it might determine whether one has a claim at all. . . ." *Neal*, 191 F.3d at 832. In this case, it matters for both purposes.

A plaintiff bringing a cause of action for slander of title must specifically allege and prove special damages. FED.R.CIV.P. 9(g); *Cont'l Nut Co. v. Robert L. Berner Co.*, 393 F.2d 283, 286 (1968)("[S]uch is the nature of special damages. They are such as really took place. They are not to be implied but are to be specifically proved."). In a slander of title action, "special damages" mean specific pecuniary losses resulting from the slander. James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Actions for Slander of Title*, 4 A.L.R.4th 532 (1981) ("It is a well settled principle . . . that the injured party can recover

the wrongful conduct." *Moore v. Boating Indus. Ass'ns*, 754 F.2d 698, 716 (7th Cir. 1985); *see also Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) ("Whether a particular kind of injury gives rise to 'special' damages . . . depends on the tort committed. The usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.'"); *Moricoli v. P & S Mgmt. Co.*, 432 N.E.2d 903, 906-07 (Ill. App. 1982)("Special damages are such as have actually occurred, computable in money, which are the natural, but not the necessary, result of the alleged wrong. . . ." (quoting 53 C.J.S. *Libel and Slander* § 240 (1948))). "Getting the distinction right might matter for pleading (see FED.R.CIV.P. 9(g)), or it might determine whether one has a claim at all. . . ." *Neal*, 191 F.3d at 832. In this case, it matters for both purposes.

A plaintiff bringing a cause of action for slander of title must specifically allege and prove special damages. FED.R.CIV.P. 9(g); *Cont'l Nut Co. v. Robert L. Berner Co.*, 393 F.2d 283, 286 (1968)("[S]uch is the nature of special damages. They are such as really took place. They are not to be implied but are to be specifically proved."). In a slander of title action, "special damages" mean specific pecuniary losses resulting from the slander. James O. Pearson, Jr., Annotation, *What Constitutes Special Damages in Actions for Slander of Title*, 4 A.L.R.4th 532 (1981) ("It is a well settled principle . . . that the injured party can recover

only for pecuniary losses resulting from the disparaging words or material, that is, recovery is limited to harm to those interests having pecuniary value."); 50 Am.Jur.2d *Libel and Slander* § 557 ("special damages" in slander of title action consist of "pecuniary loss"); *accord Restatement (Second) of Torts* § 633 (1977); *cf. Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1222 (Ill. 1996) (discussing defamation *per quod*, noting that "special damages" mean "pecuniary loss resulting from the defamatory statement"); *see generally* 22 Am.Jur.2d *Damages* § 41 ("In tort cases, special damages are usually synonymous with pecuniary loss."). Insisting on specific allegations and proof of special damages in a slander of title action distinguishes it from defamation actions "in which the defamatory material is characterized as defamatory *per se*, [and in which] the plaintiff may [therefore] recover general compensatory damages without proving special damages." *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1138 (7th Cir. 1987); *see also Bryson*, 672 N.E.2d at 1214 ("If a defamatory statement does not fall within one of the limited categories of statements that are actionable *per se*, the plaintiff must plead and prove that she sustained actual damage of a pecuniary nature ('special damages') to recover.").

The Power Company claims to have "incurred special damages including, but not limited to, a diminution in value of its property caused by the slander and the expenditure of attorneys'

fees and costs necessary to clear the slander of title, and the imposition of higher financing costs for any future development of the property." (Compl. ¶ 53.) Diminution in value of the property to which the title relates, as well as attorneys' fees and costs "which directly flow from the wrongful disparagement" (*i.e.*, fees and costs incurred in clearing the slander of title, but not those expended in the course of bringing a slander of title action), do constitute recoverable special damages in Illinois. *See Robertson*, 295 N.E.2d at 88. Potentially higher financing costs in the future do not, however, as such damages are both contingent and speculative. As the Illinois Supreme Court has held:

> The general rule of damages in a tort action is that the wrongdoer is liable for all injuries resulting directly from the wrongful acts, provided the particular damages are the legal and natural consequences of the wrongful act imputed to the defendant, and are such as might reasonably have been anticipated. Remote, contingent, or speculative damages do not fall within this general rule.

*Haudrich v. Howmedica, Inc.*, 662 N.E.2d 1248, 1256 (Ill. 1996); *cf. Robertson*, 295 N.E.2d at 88 (plaintiff is entitled to recover "those damages *directly related* to a slander of his title") (emphasis supplied); 50 Am.Jur.2d *Libel and Slander* § 557 (in slander of title action, plaintiff is restricted to attorneys's fees and costs "reasonably necessary . . . to remove the doubt cast upon vendibility or value" and "pecuniary loss that results *directly and immediately* from the conduct of third persons")

(emphasis supplied). Accordingly, Count III is dismissed to the extent that it prays for special damages related to "the imposition of higher financing costs for any future development of the property."

## *Rule 9(g)*

Although Illinois law determines the substantive elements making up a slander of title action, "the form in which [the action] is stated is governed by federal, not state, standards of pleading." See Wright & Miller, § 1311 at 710-11. Rule 9(g) requires that "items of special damage . . . be specifically stated." FED.R.CIV.P. 9(g); *Mader v. Motorola*, 1998 WL 164880, at *7 (N.D. Ill. April 3, 1998)("Special damages must be pled with particularity."). In significant part, the specificity requirement of Rule 9(g) exists to give defendants adequate notice of the items of special damage that a plaintiff seeks to recover. See *Ores v. Willow West Condo. Ass'n*, 1996 WL 111894, at *6 (N.D. Ill. March 12, 1996). Thus, as a first observation, the Court notes that the Power Company's allegation that it has incurred special damages "including, but not limited to," those listed in the Complaint is improper under Rule 9(g). The Power Company may not withhold, or reserve for later disclosure, its alleged items of special damage, but rather must reveal them in its Complaint. See *id*. (Rule 9(g) "requires that the plaintiff plead facts that adequately reveal the nature of the claimed damages to permit the defendant to respond in

his answer and further delineate the claim during pretrial discovery."). Accordingly, the Court shall not consider, nor shall the Canal Company be held to answer (during the pre-trial or trial phase of this litigation), for items of special damage that do not specifically appear in the Complaint. *Cf.* Wright and Miller, § 1312 at 713-14.

Turning now to the pleading specificity of the two items of special damage that remain – diminution of property value and attorneys' fees and costs – the Court holds that the latter passes muster under Rule 9(g), but the former does not. As a general matter, it bears emphasis that "the level of specificity that must be provided under Rule 9(g) is uncertain and not reducible to formula. It will depend upon the nature of the claim, the type of injury sustained, and the causal connection between defendant's conduct and the damage." Wright and Miller, § 1311 at 708. To be sure, "an allegation of special damages is sufficient when it notifies the defendant of the nature of the claimed damages even though it does not delineate them with as great precision as might be possible or desirable." *Cont'l Nut Co.*, 345 F.2d at 397 (internal quotation marks omitted). In particular, the Seventh Circuit has held that "an estimation of final total dollar amounts lost is unnecessary." *Action Repair, Inc. v. Am. Broad. Cos.*, 776 F.2d 143, 150 (7th Cir. 1985). Nonetheless, "the pleadings must demonstrate some actual pecuniary loss." *Id.* For example,

allegations that "defendants' false and malicious statements" caused plaintiff to "decrease its sales" and "threaten[ed] to destroy or nearly destroy the value of [plaintiff's] investment" in the defamed property were held not to satisfy the requirement under Rule 9(g) that a plaintiff "plead actual, realized pecuniary injury." *Brown & Williamson Tobacco Corp.*, 713 F.2d at 270. On the other hand, in the context of a libel *per quod* case (another type of action requiring allegation and proof of special damages), the Seventh Circuit has held that itemization of "specific figures of . . . gross sales before and after the [alleged defamatory] publication," as well an averment that "the decrease in sales was the natural and proximate result" of the publication, was sufficient under Rule 9(g). *Id.* (internal quotation marks omitted); *accord Action Repair, Inc.*, 776 F.2d at 150.

In this case, the Power Company must set forth with greater particularity how and to what extent the value of its property has been irreparably diminished by the temporary cloud on title. In its present form, the Power Company's broad allegation of a "diminution in value of its property" (Compl. ¶ 53) fails to demonstrate the type of "actual, realized pecuniary injury" that Rule 9(g) demands. *Brown & Williamson Tobacco Corp.*, 713 F.2d at 270; *cf. Moore*, 754 F.2d at 717 n.30 ("[W]hen a person claims special damages, because they do not necessarily flow from the wrongful conduct, an itemized list of those damages normally must

- 15 -

be submitted to the court."). The Complaint does not allege, for example, that the cloud on title, while it existed, deleteriously affected the final terms or conditions of, or irreversibly derailed, a transaction involving the property. Nor is there any explicit contention that, even after the cloud on title was cleared, the alleged slander had a damaging residual effect on the vendibility or market value of the property. Put simply, the Power Company has failed to "present . . . the elements of injury . . . allegedly suffered." Wright and Miller, § 1311 at 706. Accordingly, Count III is dismissed to the extent it rests on an allegation of special damage consisting of "diminution in value of . . . property."

### Punitive Damages

The Canal Company's final objection to Count III is that the Power Company has failed to allege the type of egregious conduct that would justify the imposition of punitive damages in this case, and in any event has failed to do so "with specificity" (Mot. to Dismiss ¶ 9). Taking the second part of the objection first, the Canal Company is flatly wrong to contend that the prayer for punitive damages in this case must be set forth with specificity. *See Boykin v. Golden Rule Insurance Co.*, 1988 WL 107363, at *1 (N.D. Ill. Oct. 13, 1988); *see also Maglione v. Cottrell, Inc,.* 2001 WL 946189, at *2 (N.D.Ill. April 27, 2001). The Power Company's prayer for punitive damages must simply comport with the

liberal notice-pleading requirements of FEDERAL RULE OF CIVIL PROCEDURE 8, and it does so.

Turning now to the first part of the objection, the Court initially notes that punitive damages are recoverable under Illinois law in a slander of title action, *see Chicago Title & Trust Co. v. Levine*, 2002 WL 1350442, at *3-4 (Ill. App. June 19, 2002); *Van Tuyl v. Riner*, 1878 WL 10575, at *4 (Ill. App. 1878), but may only be awarded if the defendant's conduct is marked by "fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978). "While the question of whether punitive damages can be awarded for a particular cause of action is a matter of law, the question of whether a defendant's conduct was sufficiently willful or wanton to justify the imposition of punitive damages is for the jury to decide." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998); *West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 398 (7th Cir. 1988). In other words, whether the Canal Company must answer in punitive damages for its alleged conduct in Count III will ultimately depend on the resolution of myriad questions of fact. That resolution will not take place now; deciding a motion to dismiss is not a fact-based inquiry. *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996). Rather, at this stage the Court is

duty-bound to "construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Scheuer*, 416 U.S. at 236.

The Complaint adequately sets forth allegations which, if true, could support an award of punitive damages. The Power Company alleges that the Canal Company "signed and recorded with the Recorder of Deeds of LaSalle County, on or about July 17, 2001, a document that states that the Indenture had been terminated." (Compl. ¶ 51.) According to the Power Company, the Canal Company filed this termination document (i) with full knowledge that the Power Company had, in October 2000, "recorded with the Recorder of Deeds of LaSalle County a notice of its renewal and extension of the Indenture," and (ii) in open disregard of Judge Conlon's November 7, 2000 judgment that the Power Company was a party to, and "had properly extended the term of," the Indenture. (Id. ¶ 50.) The Power Company claims that the termination document is "false," that the Canal Company "had no authority to terminate the Indenture," and that it did so "in a malicious manner and in an attempt to harm [the Power Company] and to prevent [the Power Company] from obtaining governmental approvals necessary or helpful to the operation of the hydroelectric power plant. . . ." (Compl. ¶¶ 52, 55.) These allegations plainly satisfy Rule 8, and could, if proved, allow a jury to award punitive damages.

## CONCLUSION

For the foregoing reasons, Defendant Marseilles Land & Water Company's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Count II of the Complaint is **STAYED** pending final resolution of Marseilles Hydro Power, LLC's licensing proceeding before the Federal Energy Regulatory Commission. Count III of the Complaint is **DISMISSED** to the extent that it prays for special damages consisting of (i) "the imposition of higher financing costs for any future development of the property" and (ii) "diminution in value of . . . property." Marseilles Hydro Power, LLC is ordered to file with the clerk of the United States District Court for the Northern District of Illinois, within seven (7) days of receipt of this Memorandum Opinion and Order, the Second Amended Complaint (along with all exhibits) that was included as an exhibit to its December 23, 2002 Response to the Motion to Dismiss.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: February 7, 2003