IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
DEC 16 2005
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

MARSEILLES HYDRO POWER, LLC,

    Plaintiffs,

v.

MARSEILLES LAND AND WATER COMPANY,

    Defendants
and Third-Party Plaintiffs,

v.

ILLINOIS POWER COMPANY, et al.,

    Third-Party Defendants.

Case No. 00 C 1164

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Third-Party Defendants (collectively, the "Defendants") Illinois Power Company ("Illinois Power") and Field Container Company, L.P. ("Field Container"), have moved jointly for summary judgment against Marseilles Land and Water Company ("MLWC") based on the applicable statute of limitations. For the reasons below, Defendants' motion is **granted**.

### I. FACTUAL BACKGROUND

This case has a long and complex procedural history, but the salient facts for purposes of the present motion are relatively straightforward. In February of 2000, Marseilles Hydro Power, LLC ("MHP"), owner-operator of a hydroelectric plant, filed suit to

compel MLWC, owner of a waterpower canal in Marseilles, Illinois, to repair sections of the canal that supplied water used by the plant to generate electric power. MHP's claims were based upon contracts between the parties predecessors (indentures) that required MLWC to keep the canal in good repair and MHP to pay rent for water access privileges.

MHP initially sought relief in the form of a preliminary injunction ordering MLWC to repair the deteriorating canal so that MHP could resume operations at its newly-acquired hydroelectric plant. However, shortly after the complaint was filed, a section of the canal collapsed in April of 2000. On June 15, 2000, MLWC filed a motion for leave to file counterclaims against MHP seeking damages for the collapsed canal wall (the "Retaining Wall"), which according to MLWC, was caused in part by MHP's de-watering of a section of the canal known as the North Race in March of 2000. MHP also sought leave to file third-party claims against Illinois Power, Field Container, and others, who allegedly contributed to the collapse of the Retaining Wall and were liable to MLWC. The present motion for summary judgment pertains only to MLWC's claims against third-party defendants Illinois Power and Field Container. MLWC's third-party complaint against Illinois Power consists of claims for negligence (Count III), trespass (Count IV), and nuisance (Count V). Illinois Power is engaged in the production and distribution of electrical energy by means of installed

transmission power lines and poles. MLWC contends that Illinois Power's injurious conduct stems from its installation and maintenance of utility poles along the perimeter of the North Race, which contributed to the collapse of the Retaining Wall over time. Sometime prior to 1990, Illinois Power installed a series of utility poles along the northern edge of the North Race, which were tethered to secured points along the southern edge of the canal via a system of downguys and tension cables (the "Downguys"). The Downguys exerted additional pressure on the Retaining Wall, thereby weakening it. In 1994, Illinois Power installed another series of utility poles along the southern edge of the North Race. This installation process required Illinois Power to drill holes in the ground immediately adjacent to the edge of the canal, which permitted rain water periodically to seep through and caused further damage to the Retaining Wall. These acts contributed to the collapse of the Retaining Wall in April of 2000.

MLWC's claims against Field Container consist of separate counts for negligence (Count VI) and nuisance (Count VII). Field Container owns a factory and surrounding property located along the southern edge of the North Race, in the immediate vicinity of the collapsed Retaining Wall. Part of MLWC's claims against Field Container stems from Field Container's request and authorization of Illinois Power to conduct the utility pole installation work in 1994. In addition, Field Container maintained a parking lot

adjacent to the Retaining Wall and allowed vehicles to park in the area of the lot next to the edge of the Retaining Wall. Over time, the excess weight contributed to the eventual collapse of the Retaining Wall.

On June 22, 2000, the district court presiding over this action at the time granted MLWC's motion allowing MLWC to file its counterclaims against MHP, but denied leave to file the third-party claims, and MLWC appealed. The Seventh Circuit reversed on August 27, 2002, permitting MLWC to file its third-party complaint, which it subsequently filed on March 12, 2003. Prior to the Seventh Circuit's decision, MLWC also filed a complaint against Illinois Power in Illinois state court on May 2, 2002, which MLWC then voluntarily dismissed on October 3, 2002. The basis for the present motion, which was filed by Illinois Power and joined by Field Container, is that the claims asserted against them in the third-party complaint are untimely and therefore barred by the statute of limitations.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the

governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. **DISCUSSION**

Defendants assert that any purported claims against them are barred by the statute of limitations because MLWC had knowledge of the deteriorating condition of the Retaining Wall (and likely causes) at least since 1996, if not decades earlier. To that end, Defendants contend that MLWC's claims are governed by a four-year statute of limitations period, which applies to tortious conduct in the construction of improvements to real property. According to Defendants, MLWC was cognizant of the Retaining Wall damage for well-over four years prior to the filing of the third-party complaint, as evidenced by numerous letters exchanged between MLWC, Illinois Power, and Field Container (and its predecessor-in-interest) regarding the condition of the Retaining Wall. The Court must therefore determine (a) whether the four-year limitations period applies; (b) at what point in time MLWC's claims against Defendants accrued; and (c) whether MLWC brought its claims against Defendants outside the applicable limitations period.

#### A. **Applicable Limitations Period**

Defendants assert that the appropriate statute of limitations period for claims asserted against them is four years, as

prescribed by 735 ILCS 5/13-214. That Section provides, in pertinent part:

> (a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission.

Illinois Power contends that the events alleged in the third-party complaint resulted from the construction of improvements to real property, namely, the installation of utility poles and guywires to support an electric power distribution system along the perimeter of the North Race.

MLWC does not directly dispute that the installation work conducted by Illinois Power constituted an improvement. Instead, MLWC contends that Defendants' tortious acts caused a wrongful diversion of water onto its property, creating a continuing nuisance that renews with each successive injury for statute of limitations purposes. More specifically, MLWC maintains that Illinois Power's utility pole work and Field Container's parking lot operations damaged a drainage pipe, causing a "continuing and progressive injury" to the Retaining Wall that "occurred over time as the result of intermittent rains." (Resp. Br. at 13.)

The Court agrees with Defendants that MLWC's claims are governed by the four-year limitations period found in 735 ILCS 5/13-214. The installation of infrastructure necessary to

facilitate electric power distribution to a specific parcel of land, and the construction of a parking lot adjacent to a factory, unquestionably qualify as improvements to real property. *See St. Louis v. Rockwell Graphic Sys.*, Inc., 605 N.E.2d 555, 556-57 (1992) (holding that relevant criteria for determining what constitutes an improvement include whether it became an integral component of the overall system; whether the value of the property was increased; and whether the use of the property was enhanced); *Continental Ins. Co. v. Walsh Construction Co. of Ill.*, 524 N.E.2d 1131, 1135 (1st Dist. 1988)(explaining that creation and construction of sewer distribution system constitutes an improvement to real property).

MLWC's argument that its injuries were caused by a continuous tort is unavailing. "A continuing violation is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Bank of Ravenswood v. City of Chicago*, 717 N.E.2d 478, 484 (1st Dist. 1999). Although MLWC attempts to portray the damage to the Retaining Wall as the result of intermittent flooding caused by Defendants' acts, its injuries stem from a single, discrete event (*i.e.*, damage to the draining pipe), notwithstanding that the effects may have been compounded over time. *See Hyon Waste Mgmt. Svcs., Inc. v. City of Chicago*, 574 N.E.2d 129, 134 (1st Dist. 1991).

## B. Accrual of Claims

More fundamental to the disposition of present motion is the moment at which MLWC's claims against Defendants accrued. Generally, a limitations period begins when facts exist which authorize one party to maintain an action against another. *Bank of Ravenswood*, 717 N.E.2d at 483 ("[A] plaintiff's cause of action accrues at the time its interest is invaded. . . ." (citations omitted)). To that end, Illinois courts apply the discovery rule, which states that the statute of limitations begins to run once a person "becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Vector-Springfield Prop., Ltd. v. Central Ill. Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir. 1997)(quoting *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1139 (1995)).

Defendants assert that the deteriorating condition of the Retaining Wall and likely causes were brought to MLWC's attention on numerous occasions prior to its ultimate collapse in April of 2000. The first notice, according to Defendants, occurred in April of 1971, when Nabisco (former owner of the factory and surrounding property now owned by Field Container) wrote a letter to MLWC, informing MLWC that the wall had "sunk considerably in quite a few areas." (Illinois Power LR 56.1 Statement ("IP 56.1"), Exh. F.) Tellingly, Nabisco's letter also states, "[w]e are pointing this

out to you at this time as you may want to make a thorough investigation of your raceway walls." (*Id.*) MLWC apparently did not take remedial action or investigate the matter further.

Two years later, MLWC wrote to Field Container regarding the effect of the parking lot on the Retaining Wall. That letter, written in April of 1973, indicates that MLWC was aware of the damage caused by the operation of the parking lot:

> We would appreciate it if you would instruct your guards to notify the drivers of the large trucks . . . to keep to the building side of the street, aware from the raceway. We noticed the wall leaning badly just north of the truck entry. In our opinion the braking of the trucks over a period of years has caused this condition.

(IP 56.1, Exh. G.)

A subsequent notice regarding the general condition of the wall was sent a decade later, in May of 1981, when MLWC was copied on a letter from Nabsico to Illinois Power. Nabisco wrote again that the wall was "in imminent danger of collapse" and that "in order to repair the wall, it will be necessary to drain the head race." (IP 56.1, Exh. H.) According to Illinois Power, Nabisco did conduct some repairs to the wall around that time, although the extent of those repairs is unclear from the record.

Finally, Defendants assert that the definitive notice regarding the condition of the Retaining Wall was set forth in a June 10, 1997 letter from Field Container to MLWC, which stated:

> We understand that [MLWC] is the owner of the North Head Race, as well as the wall located along the south line of the North Head Race. The wall has deteriorated

and is now failling [sic]. As a result, the FC property
is suffering from subsidence. . . . If [MLWC] fails to
take immediate action to shore up the wall and restore
its structural integrity, FC will take action necessary
to minimize further damage to its property, and seek
reimbursement from [MLWC].

(IP 56.1, Exh. O.)

Examining the facts in a light most favorable to MLWC, the Court finds that the statute of limitations pertaining to MLWC's claims against Illinois Power began to run no later than MLWC's receipt of the June 1997 letter from Field Container. That letter, written after Illinois Power completed the last of its utility pole installation work in 1994, and well after construction of the parking lot, conveyed sufficient information to show that MLWC knew or reasonably should have known of its injury, and was under an obligation to determine whether an actionable wrong was committed. *Vector-Springfield Properties, Ltd. v. Central Ill. Light Co., Inc.*, 108 F.3d 806, 809-10 (7th Cir. 1997).

MLWC attempts to minimize the purported impact of the 1997 letter, noting, "[w]hile the attorney for FCC suggested that the wall was deteriorated and 'failing,' he did not describe the nature or cause of this condition." (Pl. Resp. at 17.) This assertion does not create a genuine issue of material fact. First, the "mere fact that the extent of the damages is not immediately ascertainable does not postpone the accrual of the claims." *Del Bianco v. Am. Motorists Ins. Co.*, 392 N.E.2d 120, 124 (1st Dist. 1979). More importantly, the Seventh Circuit has instructed that

once a person is possessed of sufficient information concerning his injury, he has no obligation to inquire further to determine whether an actionable wrong was committed. *Vector-Springfield*, 108 F.3d at 810. Indeed, in that case the plaintiff received a letter from an engineer regarding potential ground contamination around his property. *Id.* at 807-08. Plaintiff claimed that he did not have actual knowledge of any particular injury because the letter only recommended a preliminary investigation based on the fact that contamination had occurred at similar sites. *Id.* Nevertheless, the Seventh Circuit held that "a reasonable person, possessed of such a letter, would be put on notice of its injury and . . . should determine whether legally actionable conduct was involved. . . ." *Id.* at 810. In other words, knowledge of possible injury was sufficient to trigger the limitations period. *Id.* n.3.

Therefore, the Court finds that the June 1997 letter placed MLWC on sufficient notice of its injuries such that MLWC was under an obligation to inquire further to determine whether legally actionable conduct was involved. Accordingly, MLWC's claims against Defendants accrued for statute of limitations purposes no later than July of 1997, when MLWC acknowledged in its response letter the receipt of Field Container's June 10, 1997 letter describing the deteriorated condition of the wall and subsidence of the surrounding property.

## C. Timing of Third-Party Complaint

Finally, the Court must determine whether the claims asserted against Defendants in MLWC's third-party complaint were brought after the expiration of the four-year limitations period. As noted above, the critical date for accrual purposes was certainly no later than July of 1997. Consequently, the four-year limitations period expired no later than July of 2001, some twenty months before the third-party complaint was actually filed in this Court on March 12, 2003.

The fact that MLWC initially sought leave to file its third-party claims in June of 2000, which was denied by the district court, does not affect the relevant dates for statute of limitations purposes. Moreover, Defendants correctly assert that the applicable limitations period is not tolled during the pendency of an appeal. *Block v. Pepper Const. Co.*, 710 N.E.2d 85, 90 (1st Dist. 1999)("During the pendency of an appeal, 'the judgment of the lower court is not vacated or suspended and the appeal does not postpone the commencement date of the running of the statute of limitations.'"); *see also Fleming v. Kane County*, 116 F.R.D. 567, 576 (N.D. Ill. 1987). Even though the Seventh Circuit ultimately reversed the district court's denial of MLWC's motion for leave to file its third-party complaint, MLWC took absolutely no action to preserve their claims against Defendants for nearly two years after the issuance of the district court's order in June of 2000.

Instead, MLWC waited until May of 2002 to pursue its claims against Defendants in Illinois state court, which were voluntarily dismissed in October, following the issuance of the Seventh Circuit's opinion reversing the district court in August of that year. Consequently, the claims in the third-party complaint against Illinois Power (Counts III - V) and against Field Container (Counts VI and VII) were brought outside of the four-year limitations period and are thus time-barred.

### IV. **CONCLUSION**

For the reasons set forth herein, the Defendant's Motion for Summary Judgment is **granted**.

**IT IS SO ORDERED.**

                                            _____
                                            Harry D. Leinenweber, Judge
                                            United States District Court

Dated: December 16, 2005